UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FLAME-SPRAY INDUSTRIES INC.,

                                    Plaintiff,

        -against-

GTV AUTOMOTIVE GmbH, GTV Gmbh & CO. KG,
GTV-mbH, and GTV VERSCHLEIßSCHUTZ GmbH,

                                    Defendants.
-------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 14 2017   ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 15-6664

(Wexler, J.)

APPEARANCES:

ULMER & BERNE LLP
By:    Robert E. Chudakoff, Esq. and Nicholas B. Wille, Esq.
1660 West Second Street, Suite 1100
Cleveland, Ohio  44113
        and
RIVKIN RADLER LLP
By:    Stephen J. Smirti, Jr., Esq., and Michael C. Cannata, Esq.
926 RXR Plaza
Uniondale, New York  11556
Attorneys for Plaintiff

SMITH, GAMBRELL & RUSSELL, LLP
By:    John G. McCarthy, Esq. and Jason S. Bell, Esq.
1301 Avenue of the Americas, 21st Floor
New York, New York  10019
Attorneys for Defendants

WEXLER, District Judge:

        Plaintiff Flame-Spray Industries Inc. ("Flame-Spray" or "plaintiff") commenced this

diversity action alleging, *inter alia,* breach of contract and misappropriation of trade secrets as

well as violations of the Lanham Act by defendants GTV Automotive GmbH ("GTV

Automotive"), GTV GmbH & Co KG ("GTV & Co"), GTV-mbH ("GTV-mbH"), and GTV

Verschleißschutz GmbH ("GTV Verschleißschutz") (collectively "defendants"). Currently

before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(2), (6), and (7) of the Federal Rules of Civil Procedure. Motion, Docket Entry ("DE") [21]

For the reasons set forth below, the motion is denied.

## I. BACKGROUND

The facts are taken from the amended complaint and are assumed to be true for purposes of this motion. Plaintiff is a New York corporation with its principal place of business in New York. All the defendants are partnerships or limited liability companies organized under the laws of Germany, with principal places of business in Germany, and whose partners or members are citizens of Germany. Plaintiff alleges that the Defendants "have common principals, officers and managers." Amended Complaint ("Am. Compl.") ¶7, DE [15].

### A. Factual History

Flame-Spray and its predecessors developed advanced thermal spray technologies for the application of metallic and composite coatings onto a surface. The technology is referred to as Plasma Transferred Wire Arc ("PTWA") technology and it is used to coat automotive and heavy equipment engines. In the 1990s, Ford Motor Company ("Ford") acquired all the patents concerning PTWA technology in existence at the time of the acquisition, and then licensed the technology to Flame-Spray as its sole licensee. As the sole licensee of the Ford PTWA patents, Flame-Spray "is the only source, absent Flame-Spray authorization, for potential PTWA customers to obtain torch systems and components utilizing the full range of Ford and Flame-Spray PTWA technology and proprietary Confidential Information and know-how belonging to Flame-Spray." Am. Compl. ¶15. Some of Flame-Spray's improvements to the technology have been patented, while others have been "maintained confidentially as trade secrets." *Id.* ¶16.

2

## 1. Agreements Between the Parties

Flame-Spray entered into a "business relationship with GTV to manufacture and supply PTWA technology to Flame-Spray approved customers in Europe and elsewhere." Am. Compl. ¶17. Before this relationship was established, GTV had had "no experience with PTWA technology, no experience with rotating torches, and no experience with coating of engine blocks or engine bores." *Id.* ¶18. Flame-Spray and the GTV entities entered into a series of four Mutual Non-Disclosure Agreements ("NDA"), beginning in 2003, that governed their relationship.[1] The NDAs, which govern the treatment of the exchange of confidential information between the parties, are essentially identical, except as discussed below.

The 2003 NDA purports to be between Flame-Spray and GTV-mbH and was signed by Klaus Nassenstein on behalf of GTV-mbH. The NDA contains a choice of law provision stating that the agreement "shall be construed under the laws of the State of New York."

The 2006 NDA purports to be between Flame-Spray and GTV GmbH & Co. KG, and is again signed by Nassenstein. It also contains the identical choice of New York law provision. The parties concurrently entered into an agreement that "outlined additional formal terms of the parties' working relationship." Am. Compl. ¶34. This agreement, referred to by plaintiff as the "Production Agreement," is signed by both parties and contains details concerning the supplying of technology by Flame-Spray to GTV. It states that improvements and/or developments made by Flame-Spray are owned by it, and "improvements/developments relating to PTWA or similar technology that is developed by GTV will be owned by GTV." Production Agreement, p. 2.

---

[1] All the NDAs were attached to the Amended Complaint and are incorporated by reference.

GTV's improvements/developments are, however, subject to "a royalty free license" to be provided to Flame-Spray.

The 2009 NDA states in its initial paragraph that it is an agreement between Flame-Spray and simply "GTV" having a place of business at Gewerbegebit, Luckenbach, Germany, but a stamp next to the signature says "GTV Verschleißschutz GmbH." This NDA also contains the choice of law provision regarding application of New York law.

The 2011 NDA also states in its initial paragraph that it is an agreement between Flame-Spray and, as in the 2009 NDA, "GTV" having a place of business at Gewerbegebit, Luckenbach, Germany. In the 2011 NDA, however, the stamp next to the signature says "GTV Automotive GmbH." In addition to the choice of law language regarding the agreement's construction under New York law, the 2011 NDA also contains a forum selection clause stating that "any disputes arising under this Agreement shall be resolved in a court sitting in the State of New York. The parties agree to personal jurisdiction in New York and waive any and all objections to personal jurisdiction in New York."

## 2. Dispute Between the Parties

For years, the parties engaged in business pursuant to the NDAs and the Production Agreement. GTV would identify a potential client and Flame-Spray would provide written authorization for GTV to sell PTWA equipment to that customer. GTV then manufactured and supplied the equipment, and paid Flame-Spray a commission.

At some point, GTV began working separately with Ford's Germany affiliate ("Ford Germany") to patent modifications and improvements to the PTWA technology. In 2010, Ford Germany and GTV filed a joint international patent application for a modified PTWA torch.

4

GTV began selling its PTWA equipment to customers without obtaining Flame-Spray approval. In March 2013, GTV declared its intention to stop selling PTWA equipment.

Flame-Spray alleges that GTV did not stop selling PTWA equipment, but rather continues to manufacture and sell its modified version, which GTV calls Rotating Single Wire ("RSW") technology. Plaintiff alleges that the RSW torch "is based upon the fundamental original PTWA design that is part of the original Ford patent package of which Flame-Spray is the sole licensee and to which GTV had access only from Flame-Spray, subject to the Production Agreement and NDAs." Am. Compl. ¶59. The RSW technology relies upon and utilizes confidential information and know-how, constituting trade secrets, that was provided by Flame-Spray to GTV under the agreements between the parties.

## B. Procedural History

After commencing this action, plaintiff amended its complaint. The Amended Complaint asserts nine causes of action: (I) breach of contract; (II) unjust enrichment; (III) promissory estoppel; (IV) misappropriation of trade secrets; (V) unfair competition; (VI) tortious interference with business relationships; (VII) false designation under Lanham Act; (VIII) false advertising under the Lanham Act; and (IX) accounting. Defendants have moved to dismiss the amended complaint for lack of personal jurisdiction over the corporate entities, forum non conveniens, and failure to join a necessary party. They further move to dismiss the claims for breach of contract, misappropriation of trade secrets, unfair competition, and tortious interference with business relationships for failure to state a claim.

## II. DISMISSAL FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standards

When opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Before discovery has been conducted, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *see also Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.").

### B.    Personal Jurisdiction Over Defendants

Defendants indicate that GTV Verschleißschutz is the successor in interest to both GRV & Co. and GTV-mbH, but argue that GTV Automotive is a separate and distinct company.[2] *See* Declaration of Klaus Nassenstein, ¶6. While conceding that GTV Automotive is subject to the forum selection clause in the 2011 NDA, defendants argue that GTV Verschleißschutz is not a signatory to that agreement and thus cannot be bound by it, and that there are insufficient contacts permitting long-arm jurisdiction over it. Plaintiff counters that all the GTV defendants

---

[2] For purposes of the legal analysis of this opinion, defendants GTV-mbH, GTV & Co., and GTV Verschleißschutz will be referred to collectively as "GTV Verschleißschutz," the current corporate name indicated by defendants. The remaining defendant will be referred to as "GTV Automotive," as previously defined.

acted as a single entity throughout the relationship with Flame-Spray and that long-arm jurisdiction is appropriate. The Court analyzes the bases for personal jurisdiction separately.

### 1. Forum Selection Clause

For a forum selection clause to apply, the party seeking enforcement must demonstrate that: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.,* 572 F.3d 86, 89 (2d Cir. 2009). A party resisting enforcement of a forum selection clause may rebut "the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383-84 (2d Cir. 2007) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S. Ct. 1907 (1972)). Defendants do not dispute that Plaintiff's claims against GTV Automotive are governed by the forum selection clause, but argue that GTV Verschleißschutz was not a signatory to the 2011 NDA and thus is not bound by the clause. Plaintiff alleges that defendants "operated under each of the NDAs as one entity" and that the parties understood that each NDA and the Production Agreement applied to and was binding on each GTV entity. Am. Comp. ¶¶21, 36. Moreover, plaintiff alleges that the confidential information disclosed by Flame-Spray under the NDAs was routinely and regularly shared "among and across the various GTV entities without regard to corporate formalities." *Id.* ¶22.

The Court finds that for purposes of this motion, plaintiff has sufficiently alleged that there is no distinction between the GTV entities that would allow GTV Verschleißschutz to

avoid application of the forum selection clause. Noting the importance of enforcing valid forum selection clauses, the Second Circuit has stated that "where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI, Inc. v. Stato Della Città Del Vaticano,* 714 F.3d 714, 722 (2d Cir. 2013) (quoting *Holland Am Line Inc. v. Wärsilä N. Am., Inc.,* 485 F.3d 450, 456 (9th Cir. 2007)). The *Magi* court reasoned that requiring a non-signatory successor party to be held to a forum selection clause would prevent parties from "using evasive, formalistic means lacking economic substance to escape contractual obligations." 714 F.3d at 722 (quoting *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.,* 585 F.3d 696 701 (2d Cir. 2009)). Although the *Magi* court expressly did not "reach the question of when a signatory may enforce a forum selection clause against a non-signatory," 714 F.3d at 723 n.10, its reasoning is equally applicable in the current situation.

Defendants do not allege that the clause was procured by fraud, and any argument that enforcement of the forum selection clause would be unreasonable or unjust fails as insufficient to contradict the choice made by the parties when they executed their agreement. *See Atl. Container Line AB v. Volvo Car Corp.,* No. 14-cv-1811, 2014 WL 4730152, at *7 (S.D.N.Y. Sept. 22, 2014) (forum selection clause enforceable since "[m]ere inconvenience and expense of travel are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum, because such matters presumably were contemplated by the parties when they entered into the contract."). Thus for purposes of this motion, the Court finds that plaintiff makes a prima facie case that all defendants are subject to the forum selection clause.[3]

---

[3]As the Court finds below that long-arm jurisdiction is also appropriate, it declines to determine at this juncture whether the tort claims fall within the scope of the forum selection clause.

2. Long Arm Jurisdiction

Even assuming that the forum selection clause is not applicable to GTV

Verschleißschutz, those defendants are subject to the jurisdiction in New York pursuant to the

long-arm statute, C.P.L.R. §302(a)(1). To determine whether there is personal jurisdiction under

this section, "a court must decide (1) whether the defendant 'transacts any business' in New York

and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van

Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Mont.

Bd. of Invs.,* 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006)). Section 302(a)(1) is

typically invoked where an out-of-state defendant breaches a contract with plaintiff or commits a

commercial tort against plaintiff in the course of transacting business in New York. *See Thorsen

v. Sons of Norway,* 996 F. Supp. 2d 143, 157 (E.D.N.Y. 2014) (internal quotation and citation

omitted).

To determine whether a non-resident transacts business in New York sufficient to satisfy

C.P.L.R. §302(a)(1), several factors should be considered including:

> (i) whether the defendant has an on-going contractual relationship
> with a New York corporation; (ii) whether the contract was
> negotiated or executed in New York and whether, after executing a
> contract with a New York business, the defendant has visited New
> York for the purpose of meeting with parties to the contract
> regarding the relationship; (iii) what the choice-of-law clause is in
> any such contract; and (iv) whether the contract requires
> franchisees to send notices and payments into the forum state or
> subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22-23 (2d Cir. 2004) (quoting *Agency Rent A

Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996)). No one factor is

determinative, and the decision is based on the totality of the circumstances. The Court finds

9

that analysis of these factors in this case leads to the determination that defendants did indeed transact business in New York.

An ongoing course of conduct or relationship may be sufficient to satisfy this provision. Plaintiff and defendants enjoyed a business relationship over the course of several years, and by agreement of the parties, this relationship was always governed by New York law. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 62 (2d Cir. 2012) (citing *Fischbarg v. Doucet*, 9 N.Y.3d 375, 382-83, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007) (long-arm jurisdiction supported where defendants "established a substantial ongoing professional commitment between themselves and plaintiff, governed by the laws" of New York)). Indeed, the most significant factor favoring jurisdiction is the existence of the New York choice of law provision in each NDA executed by the parties "because the parties, by so choosing, invoke the benefits and protections of New York law." *Sunward Elecs.*, 362 F.3d at 23. Several other allegations also support a finding of jurisdiction including *inter alia,* that the parties maintained a continuous business relationship for a period of years, defendants made payments under the agreements to plaintiff in New York, and there was at least one visit to the forum by a representative of defendants. Based on the totality of the circumstances, the Court concludes that defendants transacted business in New York for the purposes of jurisdiction under CPLR §302(a)(1).

In addition to the transaction of business, each cause of action alleged must arise from that transaction such that it has an "articulable nexus" or "substantial relationship" with it. *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 289-99, 2017 WL 2466661, at *4 (2017) ("At the very least, there must be a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of

10

the ultimate merits of the claim." (internal quotation and citation omitted)). Jurisdiction under CPLR 302(a)(1) is not limited to contract actions, but may also apply to tort claims where it is established that the tort arose out of the relevant transaction. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 n.3 (2d Cir. 1999). "Claims sounding in tort may properly 'arise from' the transaction of business in New York, even when the acts underlying the cause of action took place outside of New York, as long as they are sufficiently related to that transaction of business." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 206 (S.D.N.Y. 2002). Here, plaintiff's claims, whether sounding in contract or tort, all arise from the business relationship between it and defendants. As such, the Court finds that there is a sufficiently close connection between the acts constituting the transacting of business under §302(a)(1) and plaintiff's claims in this action to allow the exercise of personal jurisdiction over defendants.

The Court concludes that plaintiff has made a prima facie showing of personal jurisdiction over the defendants under CPLR §302(a)(1).[4]

### 3. Due Process

In addition to satisfying New York's long-arm jurisdiction statute, requirements of due process must be met such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. In making this determination, a court examines two issues: minimum contacts and reasonableness. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

---

[4] Upon finding that there is personal jurisdiction over the defendants pursuant to C.P.L.R. 302(a)(1), the Court declines to decide whether jurisdiction may also be found under C.P.L.R. 302(a)(3).

While the existence of contracts between the parties does not automatically establish sufficient minimum contacts, factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). The same facts supporting the conclusion that defendants transacted business in New York under CPLR 302(a)(1), viewed in their totality, also suffice to show that minimum contacts exist. In addition, the presence of the choice of New York law provisions in all the NDAs, coupled with the ongoing, years-long relationship enjoyed by defendants with the New York plaintiff establishes that defendants purposefully invoked the benefits and protections of New York laws and created the reasonable foreseeability that litigation could take place in that state. *See Burger King,* 471 U.S. at 479, 487 (finding that exercise of jurisdiction did not offend due process where parties had a substantial and continuing relationship, defendant "received fair notice from the contract documents and the course of dealing that he might be subject to suit" in another forum, and "failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair").

As to reasonableness, defendants argue only that it would be unfair to "drag" them "across an ocean for litigation here when New York has minimal interest in regulating these affairs." Defs' Memorandum of Law at 11, DE [21-1]. As discussed above, New York has an interest where a party invokes its benefits and protections by expressly choosing to be bound by its laws. Defendants' generalized complaints of inconvenience do not rise to the level of a

constitutional violation. *See, e.g., Chloe,* 616 F.3d at 173; *LaChapelle v. Torres,* 1 F. Supp. 3d 163, 179 (S.D.N.Y. 2014).

For all the foregoing reasons, the Court concludes that plaintiff has established a prima facie case for the exercise of personal jurisdiction over defendants.

## C. Forum Non Conveniens

Defendants also claim that regardless of this Court's jurisdiction over them, Germany is the proper forum under the doctrine of forum non conveniens. In determining a motion to dismiss based on forum non conveniens, the court typically considers three steps: (1) "the degree of deference properly accorded the plaintiff's choice of forum," (2) "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute," and (3) the balance between "the private and public interests implicated in the choice of forum." *Norex Petroleum, Ltd. v. Access Indus.,* 416 F.3d 146, 163 (2d Cir. 2005).

The existence of a valid forum selection clause, however, changes the analysis, as that clause should be "given controlling weight in all but the most exceptional circumstances." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas,* -- U.S. --, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013) (internal quotation and citation omitted). "Once the Court determines that a forum-selection clause is valid, the only remaining inquiry is whether there are public interest considerations—such as the desire to avoid court congestion or the preference for adjudicating local controversies locally—that weigh against its enforcement." *Midamines SPRL Ltd. v. KBC Bank NV,* No. 12 Civ. 8089, 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014) (citation omitted); *see also Atl. Marine Constr.,* 134 S. Ct. at 582 (when the parties have agreed to a forum selection clause, "they waive the right to challenge the preselected forum as inconvenient

13

or less convenient for themselves or their witnesses, or of their pursuit of the litigation" and therefore the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum"). Neither party has suggested that court congestion is an issue here. As to the interests of the locality, the interests of New York jurors in adjudicating the rights of a New York corporation are at least as great as the interests of a German court. As this factor does not clearly weigh in favor of either party, it does not constitute an exceptional circumstance that would override a valid forum selection clause. Accordingly, the Court gives controlling weight to the parties' contractual choice of forum.

The Court further finds that, even if the forum selection clause did not apply to GTV Verschleißschutz, application of the traditional forum non conveniens analysis also leads to denial of defendants' motion. That analysis begins with a determination of the deference to be given plaintiff's choice of forum, "with the assumption that the plaintiff's choice of forum will stand," and that greater deference is accorded this choice when the plaintiff has sued in its home forum. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). Clearly, plaintiff has chosen to initiate suit in its home forum. Defendants' accusation of forum shopping on the part of plaintiff is, at best, disingenuous. The Second Circuit has cautioned district courts to "arm themselves with an appropriate degree of skepticism" since it is possible that "defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *Id.* at 75. Despite the written agreement containing an express forum selection clause, defendants now argue that they face "major obstacles to defending themselves in this forum" including, *inter alia,* the "expense of the American adversarial system," with its "wide-ranging compulsory discovery,"

14

and the "risk involved in submitting a complex civil case to a jury," which, they note exhibit "habitual generosity." Defs." Mem. at 14-15. In light of the voluntary execution of an NDA selecting a New York forum as well as the presence of a choice of New York law clause in all the agreements, defendants' claim that plaintiff's choice of forum is "an attempt to gain an unfair and illegitimate tactical advantage," *id.* at 15, rings hollow. Since plaintiff has commenced this litigation in its home state, the Court affords significant deference to its choice of forum.

A determination of whether Germany would be an adequate alternative forum is unnecessary as plaintiff does not appear to contest this point. The existence of an adequate alternative forum is not, in and of itself, determinative. An action may be dismissed on forum non conveniens grounds "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri,* 274 F.3d at 74-75.

Turning to the remaining considerations, the Court has determined above that the public factors do not favor granting defendants' motion. As to the private factors, generally, the following are considered: (1) ease of access to evidence; (2) the availability of compulsory process to compel the attendance of unwilling witnesses and the cost of willing witnesses' attendance; (3) the possibility of a view of premises, if relevant; and (4) all other practical problems that might make the trial quicker or less expensive. *In re Herald,* 540 F. App'x 19, 28 (2d Cir. 2013) (summary order) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S. Ct. 839, 91 L.Ed. 1055 (1947)).

Application of the private factors does not override plaintiff's choice of forum. Many of the potential problems cited by defendants exist regardless of where the case is litigated -- documents in German will likely be translated to English, interpreters will be necessary to bridge

language gaps. This Court is confident that concerns regarding discovery hurdles and expenses can be capably addressed by the Magistrate Judge during discovery through various means such as cost-sharing and/or the use of video-conferencing. Finally, as the claims against GTV Automotive clearly are properly here by the undisputed application of the forum selection clause, it would be inefficient to conduct a parallel litigation in Germany against GTV Verschleißschutz.

## III.     DISMISSAL FOR FAILURE TO NAME A NECESSARY PARTY

Defendants also seek dismissal under Rule 12(b)(7) for failure to name Ford Germany as a necessary party under Rule 19. In considering this motion, the Court must apply the two-part test set forth in Rule 19. First, the Court determines whether Ford Germany is a required party under Rule 19(a). If the answer to that inquiry is "yes" and Ford Germany cannot be joined for jurisdictional or other reasons, the Court must consider whether it is indispensable under Rule 19(b).

Plaintiff alleges in the amended complaint that GTV worked with Ford Germany to patent a modified PTWA torch, and that the patent application "expressly acknowledges that the claimed invention incorporates PTWA technology" and uses drawings from the original PTWA patents. Am. Compl. ¶¶48-49. Defendants argue that plaintiff is attempting to make an end-run attack on those patents, and thus claim that Ford Germany must be present to protect itself. In addition, defendants suggest that plaintiff is attacking the licensing agreement that exists between defendants and Ford Germany regarding the RSW technology. The Court finds that plaintiff's allegations do not lead to the conclusion that Ford Germany is a necessary party to this litigation.

A party is required if, in that party's absence, "the court cannot afford complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A). The allegations in the amended complaint do not expressly challenge any patent or agreement involving Ford Germany, but rather constitute factual allegations in support of the claims asserted against GTV. Whether or not plaintiff eventually pursues Ford Germany for any relief is not relevant to the current inquiry. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 385 (2d Cir. 2006) (finding that although litigation with missing party may be "inevitable," Rule 19(a) "is concerned only with those who are already parties"). If plaintiff prevails here, it is only GTV that may need to compensate Flame-Spray, not Ford Germany.

"A party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l,* 299 F.3d 134, 139 (2d Cir. 2002). Since the Court has determined that Ford Germany is not a necessary party to this litigation, it need not decide whether it is indispensable under Rule 19(b). *See MasterCard,* 471 F.3d at 389. Defendants' motion to dismiss for failure to join a necessary party is also denied.

## IV. DISMISSAL FOR FAILURE TO STATE A CLAIM

Defendants also challenge several causes of action as failing to state a claim. Specifically, they move to dismiss the claims for breach of contract, misappropriation of trade secrets, unfair competition, and tortious interference with business relations.

### A. Legal Standards

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106,

17

113 (2d Cir. 2013) (citations omitted); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55,

58-59 (2d Cir. 2010). The plaintiff must plead enough facts "to state a claim for relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). A "formulaic recitation of the elements of cause of action will

not do," and "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombley*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim

for relief" is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679. Reciting bare legal conclusions is

insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*,

at 679. In determining the motion, the Court may consider documents that are incorporated by

reference in the complaint and documents upon which plaintiff relied in bringing suit. *See*

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

## B. Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2)

adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer &*

*Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). The Court finds that the

amended complaint adequately states a claim for breach of contract.

There is no dispute that the parties entered into various agreements. To the extent

defendants argue that specific entities were not bound by agreements that they did not execute,

the argument fails for the same reasons as discussed above. For purposes of this motion to

dismiss, plaintiff has adequately alleged that defendants acted as a single entity.

Plaintiff alleges that it performed under the agreements and defendants do not claim otherwise on this motion. As to the breach, plaintiff has alleged that defendants failed to pay it commissions and/or royalties due under the agreements and that such failures constituted a breach and caused it damage. Whether there is a breach of any of these agreements and whether plaintiff suffered damages are questions of fact that cannot be decided on a motion to dismiss. Finally, defendants raise various issues regarding the timing of their receipt of information from plaintiff that may ultimately raise issues such as application of the statute of limitations. These arguments are better addressed once the factual record has been further developed.

## C. Misappropriation of Trade Secrets

A claim under New York law for the misappropriation of trade secrets requires plaintiff to demonstrate "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (internal quotation and citation omitted). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (internal quotation marks and brackets omitted). In addition, "confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009).

Defendants argue that they have "no idea" what plaintiff is alleging when it claims that they have misappropriated "information and know-how concerning the design and implementation of PTWA technology." To the contrary, plaintiff has alleged that GTV has

19

misappropriated confidential information including technical drawings and designs, controls manual, software, drawings and testing procedures. The Court finds these allegations to be sufficient to raise a plausible claim for relief.

**D. Unfair Competition**

Defendants also seek to dismiss plaintiff's claim of unfair competition. Under New York law, a claim of "unfair competition may be predicated 'upon the alleged bad faith misappropriation of a commercial advantage belonging to another by exploitation of proprietary information or trade secrets.'" *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 162 (E.D.N.Y. 2013) (quoting *Beverage Mktg. USA, Inc. v. South Beach Beverage Co.*, 20 A.D.3d 439, 440, 799 N.Y.S.2d 242 (2d Dep't 2005) (internal quotation and citation omitted)). While an unfair competition claim may be broadly construed, the essence of such a claim is that "defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (internal quotation and citation omitted).

Plaintiff has sufficiently alleged conduct by defendants concerning the latter's misappropriation of plaintiff's work and abuse of the confidential relationship between the parties. As such, plaintiff has sufficiently alleged a cause of action for unfair competition.

**E. Tortious Interference with Business Relations**

To state a claim for tortious interference with a business relationship, a cause of action also referred to as tortious interference with prospective economic advantage, a plaintiff must allege "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with

those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). "A properly pleaded complaint for this tort must allege relationships with specific third parties with which the respondent interfered." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (citing cases).

Plaintiff alleges that defendants have "interfered with Flame-Spray's relationships with its customers and potential customers . . . to market and sell a competing PTWA torch to Flame-Spray customers and potential customers." Am. Compl. ¶102. Plaintiff identifies two clients that had already purchased Flame Spray PTWA equipment to which defendants subsequently sold their product. *See id.* ¶¶64-65. It further claims that RSW technology has been sold to General Motors, "whom GTV knows to be a previous customer of Flame-Spray." *Id.* ¶66. Thus, plaintiff claims, defendants' "improper sales" deprived Flame Spray of "sales, commissions and license fees." *Id.* ¶67. The Court finds these allegations sufficient to withstand a motion to dismiss.

## V. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied.

SO ORDERED.


LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       August 14, 2017

21